# ORIGINAL

FILED

MAY 2 2 2006

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
Deputy

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | Case No. 3:04-CR-00079-06-RRB |
| | . | |
| Plaintiff, | . | Anchorage, Alaska |
| | . | April 18, 2005 |
| vs. | . | 1:58 o'clock p.m. |
| | . | |
| MONICA J. MARTINEZ, | . | **PROPOSED CHANGE OF PLEA** |
| | . | **HEARING** |
| Defendant. | . | |

. . . . . . . . . . . .

## TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE RALPH R. BEISTLINE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          STEPHAN A. COLLINS, ESQ.
                            U. S. Attorney's Office
                            222 W. Seventh Ave., #9, Room 253
                            Anchorage, Alaska  99513-7567
                            (907) 271-5071

Probation Officer:          PATTY WONG
                            U. S. Probation/Pretrial Service
                            222 West 7th Avenue, #48
                            Anchorage, Alaska  99513
                            (907) 271-5494

For the Defendant:          WILLIAM F. DEWEY, ESQ.
                            Ashton & Dewey
                            1101 West Seventh Avenue
                            Anchorage, Alaska  99501
                            (907) 276-3299

Court Recorder:             APRIL KARPER
                            ELISA SINGLETON
                            U.S. District Court
                            222 West 7th Avenue, #4
                            Anchorage, Alaska  99513
                            (907) 577-6102
                            (907) 577-6105

*T. M. Transcribing*
*1980 Commodore Drive*
*Anchorage, Alaska 99507*
*(907) 277-8591 I Fax (907) 272-9258*

2

1    APPEARANCES (Continued):

2    Transcription Service:        T. M. TRANSCRIBING
                                   1980 Commodore Drive
3                                  Anchorage, Alaska  99507-4915
                                   (907) 277-8591

4

5

6

7

8    Proceedings recorded by digital sound recording, transcript
     produced by transcription service.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

<u>ANCHORAGE, ALASKA - MONDAY, APRIL 18, 2005</u>

(Call to Order of the Court at 1:58 o'clock p.m.)

(Log 1:58:47)

THE CLERK:  All rise, His Honor the Court, the United States District Court for the District of Alaska is now in session, the Honorable Ralph R. Beistline presiding.  Please be seated.  Your Honor?

THE COURT:  Yes.

THE CLERK:  Ms. Martinez is on telephonically.

THE COURT:  Okay, we're on the record, it's United States of America versus Monica Martinez.  Ma'am, can you hear us?

THE DEFENDANT:  You -- if you could speak up just a little bit more.

THE COURT:  Okay, how about that?

THE DEFENDANT:  Yeah, that sounds good, thank you.

THE COURT:  You're coming across loud and clear.  This is Case A04-079-5 Criminal.  Parties apparently have reached an agreement and it's Ms. Martinez' intention to enter a guilty plea to the superseding indictment.  Is that my understanding?

MR. DEWEY:  Yes, it is, Your Honor.

THE COURT:  Government's -- is that the -- accurate from the government's perspective?

MR. COLLINS:  That is, Your Honor.  And because the -- the defendant is not here and present, may we have the record

1    reflect, and have her affirm this, that she is waiving her right

2    to be present --

3              THE COURT:  Yes, that's the next subject --

4              MR. COLLINS:  -- physically.

5              THE COURT:  -- I was going to discuss.

6              MR. COLLINS:  Okay.

7              THE COURT:  So, ma'am, you said you can hear us

8    clearly, is that right?

9              THE DEFENDANT:  Yes, when you speak up, yes.

10             THE COURT:  Okay, and you know you have a right to be

11   here in person for this?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And you would rather attend this part of

14   the proceeding telephonically, is that right?

15             THE DEFENDANT:  That's correct.

16             THE COURT:  Okay, let's see.  You -- you say you're

17   Monica Martinez.  Can you give us your social security number so

18   that I can confirm that?

19             THE DEFENDANT:  Yes, 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.

20             THE COURT:  And your date of birth?

21             THE DEFENDANT:  7/12/1978.

22             THE COURT:  Okay.  So counsel have any objection to

23   proceeding telephonically?

24             MR. COLLINS:  No, Your Honor.

25             THE COURT:  So the plan is that we'll do the change of

5

plea telephonically, we'll schedule a sentencing date and she

will of course be here in person for the sentencing, is that

everyone's understanding?

MR. DEWEY:  That is correct.

MR. COLLINS:  Yes, Your Honor.

THE COURT:  Is that your understanding, ma'am?

THE DEFENDANT:  Yes.

THE COURT:  Okay, so I'm going to ask you some

questions now, it has to be under oath, so we're going to swear

you in, and then we'll have a list of questions for you.  Okay?

THE DEFENDANT:  Okay.

THE COURT:  Madam Clerk, if you can swear her in?

MONICA J. MARTINEZ  DEFENDANT, SWORN

VOIR DIRE EXAMINATION

THE CLERK:  Thank you.  For the record please state

your full name, spelling your last name, with your address?

A    Monica Josephine Martinez, that's M-A-R-T-I-N-E-Z.  My

mailing address is Post Office Box 231284, Las Vegas, Nevada,

89123.

THE CLERK:  Thank you.

BY THE COURT:

Q    All right, ma'am, you understand, having been sworn in and

having taken an oath, you're obligated to respond truthfully to

the questions that I ask, is -- do you understand that?

A    Yes.

*T. M. Transcribing*
*1980 Commodore Drive*
*Anchorage, Alaska 99507*
(907) 277-8591 I Fax (907) 272-9258

Martinez - Voir Dire                                    6

1    Q    If you don't you could be charged with perjury or making a

2    false statement, understand that?

3    A    Yes.

4    Q    Okay, now, it's my understanding that it's your desire to

5    enter a guilty plea to this -- this charge that's addressed in

6    the superseding indictment, is that right?

7    A    Money laundering, yes.

8    Q    Okay, I have to make sure that you're aware of your rights

9    and that you have the mental capabilities to enter into such a

10   plea so I'm going to ask you some questions in that regard.

11   A    Uh-huh (affirmative).

12   Q    Could you first give me your -- your age?

13   A    26.

14   Q    And your -- where do you -- what's your home, your -- what

15   state do you reside in?

16   A    Nevada.

17   Q    And how long have you lived there?

18   A    About two years in May.

19   Q    Is that your home then?

20   A    Yes.

21   Q    What's the extent of your education?

22   A    I have two and a half years college education and I take

23   classes here and there --

24   Q    Okay, so you --

25   A    -- so that's about it.

1   Q    You can read and write, then, without any problem, is that

2   true?

3   A    That's correct.

4   Q    And what about your mental situation?  Are you under the

5   influence, for instance, of medication now or drugs or alcohol

6   or anything of that nature?

7   A    No.

8   Q    Have you had a problem in that regard with any of those

9   things before in the past?

10  A    No.

11  Q    So you're clean and sober today and mentally prepared to

12  proceed, is that right?

13  A    That's correct.

14  Q    Okay.  Let's talk briefly about the charges against you.

15  It's -- you did enter into a plea agreement with the government,

16  is that true?

17  A    Yes.

18  Q    And you -- did you get a chance to review that plea

19  agreement?

20  A    Yes, I have.

21  Q    And you've read it?

22  A    Yes.

23  Q    And you signed it, is that right?

24  A    Yes, that's correct.

25  Q    So you expect to be bound by it?

Martinez - Voir Dire                    8

1    A     Yes.

2    Q     Okay, did you discuss the plea agreement with your

3    attorney?

4    A     Yes, I have.

5    Q     Okay.  Very well, the plea agreement really addresses the

6    charges that we're dealing with here, and I'm looking at Page 3

7    of the plea agreement.  Do you happen to have a copy in front of

8    you?

9    A     Yes, I do.

10   Q     Where on Page 3 it talks about the charges that the

11   defendant's pleading guilty to, and the charge would be to Count

12   7 of the second superseding indictment, which charges you with

13   money laundering, do you see that?

14   A     Yes.

15   Q     In order for the government to convict you of money

16   laundering they would have to prove beyond a reasonable doubt

17   each of the elements of money laundering, do you understand

18   that?

19   A     Yes, I do.

20   Q     And the elements are actually set forth beginning on the

21   bottom of Page 3.  The first thing the government would have to

22   prove beyond a reasonable doubt is that you knowingly conducted

23   or attempted to conduct or aided and abetted the conducting of a

24   financial transaction affecting interstate commerce.  Do you

25   understand that?

Martinez - Voir Dire                                    9

A     Yes.

Q     And the second thing the government would have to prove
beyond a reasonable doubt is that the financial transaction
involved the proceeds of a specified unlawful activity, do you
understand that?

A     Yes.

Q     And a third thing the government would have to prove is
that you knew that the funds represented the proceeds of some
form of unlawful activity, do you understand that?

A     Yes.

Q     And then the last thing that the government would have to
prove is that you knew that the transaction was -- was designed
in whole or in part to do either promote the carrying on of a
specified unlawful activity or conceal and disguise the nature,
location, source, ownership and control of the proceeds of a
specified unlawful activity, or avoid a financial reporting
requirement under the state -- federal law.  Do you -- do you
understand that?

A     Yes.

Q     Okay, government has to -- would have to prove each of
those four elements beyond a reasonable doubt in order to
convict you of this crime.  Do you understand that?

A     Yes.

Q     Okay.  I'd tell the jury that if the government was able to
prove all four elements that they would be required to find you

1  guilty, do you understand that?

2  A     Yes.

3  Q     I'd also tell the jury if the government was unable to

4  prove any one of those four elements they would have to find you

5  not guilty, understand that?

6  A     Yes, I do.

7  Q     Okay.  And have you talked to your attorney about these

8  charges?

9  A     Yes.

10  Q     Are you satisfied with the legal representation that you've

11  received?

12  A     Yes.

13  Q     And you understand if I accept the guilty plea then you

14  would -- you would be rendered guilty in this particular matter

15  and we would next proceed to sentencing, do you understand that?

16  A     Yes, I do.

17  Q     And the sentencing would be done in accordance with the

18  plea agreement and with the sentencing guidelines and the laws

19  of the United States, do you understand that?

20  A     Yes.

21  Q     Okay.  Now, would -- more specifically with regard to this

22  plea agreement did you get a chance to sign that?

23  A     Yes.

24           THE COURT:  Has a signed version then returned to --

25  to us?  Is that --

Martinez - Voir Dire                                    11

1    MR. COLLINS:  Yes, sir.

2    THE COURT:  Okay, so we now have the signed version,

3  okay.

4  Q    And you read it in detail, ma'am, before you signed it, is

5  that right?

6  A    Correct.

7  Q    Okay.  One of the things it indicates in the plea agreement

8  on Page 4 is that you waive -- waiver of trial, appellate or

9  collateral attack rights.  What that basically means is you

10  waive your right to appeal your guilty plea or the sentence

11  unless there's some very unusual circumstances.  Do you

12  understand that?

13  A    I do.

14  Q    Okay, so if you don't like the sentence, as long as it's

15  consistent with the agreement you're bound by it, you understand

16  that?

17  A    Yes.

18  Q    Okay.  And it's spelled out in more detail actually in the

19  plea agreement, but I won't read every detail of it unless you

20  want me to.

21  A    No, that's fine.

22  Q    Okay.  Have there been any threats made to coerce you or

23  force you to either enter this plea agreement or enter this

24  guilty plea today?

25  A    No, there has not.

1    Q    Something you've been doing freely and -- you're doing

2    freely and voluntarily, is that right?

3    A    That's correct.

4    Q    You understand that if I accept the plea agreement you go

5    -- will not go to trial, you understand that?

6    A    Yes.

7    Q    Trial was -- has been continued in this matter, it's

8    tentatively set for the week of May 16th, so if you chose not to

9    plead guilty you could maintain your not guilty plea and trial

10    would proceed the week of May 16th, do you understand that?

11    A    Yes.

12    Q    And at that trial you would be presumed innocent and the

13    government would have to prove your guilt beyond a reasonable

14    doubt, you understand that?

15    A    Yes.

16    Q    Throughout the trial you'd be entitled to representation by

17    an attorney both before, during and after, and if you couldn't

18    afford that counsel would be appointed to represent you, do you

19    understand that?

20    A    Yes.

21    Q    And then the government at the trial would -- would be

22    required to prove your guilt with regard to each of the elements

23    of the charge and they would do that by witnesses who would be

24    sworn and testify in the courtroom, do you understand that?

25    A    Yes.

1   Q    And they would testify in front of a jury of 12 persons who
2   would have to make a determination of whether or not the
3   government had proved its case, do you understand that?
4   A    And then you could -- you could -- through your attorney
5   could cross examine any of the witnesses the government
6   presented, do you understand that?
7   A    Yes, I do.
8   Q    And then you could present your own witnesses, do you
9   understand that?
10  A    Yes.
11  Q    And lastly, you could testify yourself at the trial if you
12  wanted to, do you understand that?
13  A    Yes.
14  Q    You wouldn't have to and if you chose not to testify at the
15  trial we'd tell the jury they couldn't hold that against you, do
16  you understand that?
17  A    Yes.
18  Q    All right, in this particular case -- I'm looking again at
19  the plea agreement.  Page 7 sets forth the maximum statutory
20  penalties for this charge.  It indicates that the maximum
21  penalty in 20 years imprisonment, $500,000 fine, a $100
22  mandatory special assessment, and a three-year term of
23  supervised release.  Do you understand that?
24  A    Yes.
25  Q    Then the parties apparently have had some discussion about

1    what -- if we applied the sentencing guidelines to this

2    particular case what your sentence would actually be, and that's

3    set forth on Page 8 and 9 of the plea agreement. And if we turn

4    to Page 9 we actually see where the parties have estimated a

5    base offense level of 8, and then looking at the amount of

6    funds, it's two -- plus two, minus plus four. I don't know what

7    that means.

8              MR. COLLINS:   That means I -- if I may, there's a

9    paragraph prior to that, Your Honor, and the parties have

10   entered into this agreement under the provisions of Federal Rule

11   of Criminal Procedure 11(c)(1)(C).

12             THE COURT:   Okay.

13             MR. COLLINS:   And that is the parties mutually agree

14   that the maximum offense level that the court would apply in

15   this case would be a 14. It could be less than a 14, but the

16   maximum would be a 14.

17             THE COURT:   Okay.

18             MR. COLLINS:   And the criminal history the parties

19   have agreed is a criminal history category of I. Then the --

20   the calculations set forth on Page 9 and 10 set forth that the

21   base offense level would be an 8. Based on the amount of funds

22   for which the defendant would be held -- or, could be held

23   responsible, there could either be a plus two increase or a plus

24   three increase. And because the offense would be a violation --

25   the offense of conviction would be a violation of 18 USC Section

Martinez - Voir Dire                                    15

1    1956, there would be a plus two increase.  And based on the

2    defendant's role, she could be eligible for a minus two or a

3    minus four level downward adjustment and if she accepts

4    responsibility and continues to do so up until the time of

5    sentencing, she would be eligible for a minus two.  Based on all

6    those pluses and minuses, the final estimated range could be six

7    -- or, it could be as low as a 6 or as high as a 12.

8         THE COURT:  Which would give you a sentencing range of

9    as low as zero and as much as 16 months in jail, is that what

10   you're --

11        MR. COLLINS:  That's correct, Your Honor.

12   Q    Okay, do you understand all that, ma'am?

13   A    Yes.

14   Q    And then supervise -- this is estimates, as you heard, but

15   apparently the government has indicated that it's willing to be

16   bound by this agreement as well as you have.  Supervised release

17   is one to three years.  Do you know what supervised release is?

18   A    Yes.

19   Q    That's -- and just to make sure you do, that's after you've

20   served whatever time you're required to serve you would have to

21   follow conditions of release for a period of time and if you did

22   so, fine.  If you failed to do so you might have to go back to

23   jail for an additional period of time.  Do you understand that?

24   A    Yes.

25   Q    And then there's a fine range addressed here, and then

1    there would be a $100 special assessment that you'll be required
2    to pay as well, do you understand that?

3    A    Yes.

4    Q    Okay.  I think we've covered an awful lot of this.  This is
5    a felony that you're pleading to, do you understand that?

6    A    Yes.

7    Q    And as a result of that as soon as I accept the plea you
8    would be adjudicate -- you would be determined to be a felon,
9    which carries certain requirements, do you understand that?

10   A    Yes.

11   Q    Or certain consequences.  First, as a felon you couldn't
12   possess a weapon, do you understand that?

13   A    Yes.

14   Q    And so long as you're on probation or supervised release
15   you couldn't vote, couldn't serve on jury duty, couldn't run for
16   public office and in certain circumstances you would be
17   ineligible for public grants.  Do you understand all that?

18   A    Yes.

19   Q    Okay, we've gone through this fairly quickly, ma'am, is
20   this all -- you're following this so far?

21   A    Yeah.

22   Q    If there is jail time involved, whatever jail time is
23   involved, you would have to serve the actual time, there's not
24   parole like there is in state court, do you understand that?

25   A    Yes.

*T. M. Transcribing*
*1980 Commodore Drive*
*Anchorage, Alaska 99507*
(907) 277-8591 / Fax (907) 272-9258

Martinez - Voir Dire                                    17

1    Q    And if there's -- if it's a probationary sentence, that

2    would -- I don't know if you -- 1 think you've indicated you

3    understand generally what that is, but probation would require

4    you to comply with certain conditions, failure of which could

5    result in a period of incarceration, do you understand that?

6    A    Yes.

7    Q    Okay.  Can you think of any other questions you have,

8    ma'am, about any of this?

9    A    No.

10        THE COURT:  Okay, so we'll ask the government to set

11   forth a factual basis, and then I'll ask you, ma'am, if this is

12   true, and then I'll -- I'll ask you for your plea, okay?

13   A    Okay.

14        MR. COLLINS:  Your Honor, the parties have entered in

15   this agreement with the stipulations set forth on Pages 10 and

16   11, to which the defendant, Ms. Monica Martinez, has agreed that

17   these facts are true.  On May 14, 2004, in Anchorage, Alaska,

18   Ladale Wren deposited United States currently into Wells Fargo

19   bank account number 5329464720.  Ms. Martinez was the owner of

20   this account and Mr. Wren was a signer on this account.  The

21   United States currency Mr. Wren deposited came from a specified

22   unlawful activity.  On May 17, 2004, in Nevada Ms. Martinez

23   withdrew that money Mr. Wren had deposited and gave it to

24   another person to -- pursuant to Mr. Wren's instructions.  Mr.

25   Wren had Ms. Martinez deliver this money to facilitate and

1   promote the commission -- the commission of the specified

2   unlawful activity in which Mr. Wren was engaged.  Ms. Martinez

3   knew this -- this money came from an unlawful source but she did

4   not know the exact specified unlawful activity that it was Mr.

5   Wren had engaged in to obtain this money.  She knew, however,

6   that this United States currency she delivered was going to be

7   used to promote the unlawful activities of Mr. Wren and his

8   associates.

9   Q     Did you hear all that, ma'am?

10  A     Yes.

11  Q     Is that true?

12  A     Yes.

13          THE COURT:  So then how do you plead to Count 7 of the

14  superseding indictment for money laundering, do you plead guilty

15  or not guilty?

16          THE DEFENDANT:  Guilty.

17          THE COURT:  All right.  Ma'am, it appears to me that

18  you're fully competent and capable of entering an informed plea

19  this afternoon, that you're aware of your rights, you've had the

20  advice of counsel, and your plea this afternoon is being made

21  freely and voluntarily and you are quite apparently in control

22  of all your faculties, and therefore the court would accept the

23  plea, especially given the fact that -- or, also considering the

24  fact that the plea is supported by the facts set forth by the

25  prosecutor which you've acknowledged to be true and which facts

1    support a finding of guilty with regard to each of the elements

2    of the charge of money laundering.

3         I therefore will accept the plea, schedule -- order a

4    presentence report be prepared, and, ma'am, the probation

5    officer will get a hold of you to discuss the presentence report

6    with you.  Your attorney has the right to take part in that

7    interview.  A report will then -- will be prepared and it will

8    be one of the factors that we look at in determining what an

9    appropriate sentence is and even whether or not to accept the

10   plea agreement.

11        I'll vacate the trial as far as you're concerned and

12   schedule sentencing tentatively for July 6th, 2005, at 9:00

13   o'clock in the morning, 9:00 a.m.  How's that date look for

14   everybody?

15             MR. COLLINS:  July 6, 2005, 9:00 a.m.?

16             THE COURT:  Uh-huh (affirmative).

17             MR. COLLINS:  That should be fine, Your Honor.

18             MR. DEWEY:  That's fine with the defendant.

19             THE COURT:  Okay.  So, ma'am, any other questions?

20             THE DEFENDANT:  No.

21             THE COURT:  All right, you're -- you're released on

22   bail conditions, those conditions will remain in effect through

23   sentencing.  And I just -- I don t think we have anything else

24   we need to address today.

25             MR. COLLINS:  Not at this time, Your Honor.

20

1          MR. DEWEY:   Your Honor --

2          THE COURT:   All right, thank you very much.

3          MR. DEWEY:   -- no.

4          THE CLERK:   This court now stands adjourned.

5      (Proceedings recessed at 2:16:16 o'clock p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*T. M. Transcribing*
*1980 Commodore Drive*
*Anchorage, Alaska 99507*
*(907) 277-8591 l Fax (907) 272-9258*

21

1           C E R T I F I C A T I O N

2        I, Teresa E. Mielke, court approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    digital sound recording of the proceedings in the above-entitled

5    matter.

6

7    _____                    May 19, 2006
     Teresa E. Mielke

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*T. M. Transcribing*
*1980 Commodore Drive*
*Anchorage, Alaska 99507*
*(907) 277-8591 I Fax (907) 272-9258*